(No. 26959.—Affirmed in part, reversed in part and remanded.)
COMMISSIONERS OF DRAINAGE DISTRICT No. 1, Appellees, *vs.* HENRY L. GOEMBEL *et al.,* Appellants.

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

324

HARRY E. BROWN, and MABEL W. BROWN, for appellants.

HENRY WATERMAN, LEONARD W. TELLEEN, and WILLIAM D. GUTHRIE, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a judgment entered in the county court of Henry county in a matter pertaining to Drainage District No. 1 in Phenix township in said county. The commissioners of said district sought relief under section 37 of the Levee Act, (Ill. Rev. Stat. 1941, chap. 42, par. 37) and in the petition presented to the county court prayed that an additional assessment of $4990 be extended against all the land in the district. Appellants have appealed direct to this court from a judgment overruling their objections and confirming the assessment roll.

The district consists of approximately 4000 acres. It was organized about 1881 as a farm drainage district and exercised corporate powers under the act of its original organization until that act was repealed when it began to operate under the act known as the Farm Drainage Act (Ill. Rev. Stat. 1941, chap. 42, par. 82, *et seq.*) It continued under this latter act until May, 1937, when an election was held in accord with section 65 of the Levee Act, (Ill. Rev. Stat. 1941, chap. 42, par. 64,) following which the county clerk of Henry county canvassed the returns and declared the district had elected to adopt the provisions of the Levee Act. Since that election it has operated under the latter act and kept a record of all its proceedings, but all corporate acts made during its existence under prior acts, if recorded, have been lost or destroyed.

One of the grounds urged for reversal is as to the order overruling objectors' petition for a change of venue. The facts pertinent to such question are as follows: The commissioners filed their petition for an additional assess-

ment on October 29, 1941, and an order was entered fixing November 18, 1941, as a date for hearing. The legal representatives of the estate of John Mandel, deceased, Henry Goembel, Ralph Bollen and Martin L. Franks joined in filing twenty-three legal objections protesting the granting of the prayer of the petition. The hearing was continued from November 18, 1941, to December 3, 1941, and on the latter date Judge Davis, county judge of Henry County, announced he would not be able to preside at such hearing. An order was entered continuing the cause from December 3 to December 11 and on this latter date Judge Ludens, county judge of Whiteside county, presided. At that time there was some discussion between court and counsel as to which of the objections should be considered on that date. It is asserted on this appeal that the understanding was that the hearing on that day would be limited to those objections which did not require introduction of evidence to support. Notwithstanding such arrangement, if one was made, Judge Ludens overruled all of the objections. On the same day the objectors moved to set aside the order and urged in support thereof that they had not been given an opportunity to introduce material evidence in support of some of the objections. When the matter was called for hearing on December 23, the objectors moved for leave to refile their objections previously overruled and alleged they had not been given a hearing and opportunity to present evidence. While the motions of December 11 and 23 were still pending, the court heard evidence offered by the commissioners in support of the petition after which he overruled the motion of December 11 to vacate and the one of December 23 for leave to refile and concluded the order with a direction that the prayer of the petition be granted and that the commissioners prepare and file an additional assessment roll on or before January 20, 1942. The hearing on the assessment roll was set for February 10, 1942, to which date

the cause was continued. The assessment roll was filed within the time directed.

On February 2, objectors filed their sworn petition for a change of venue from Judge Ludens and notice was given on February 3 that the petition would be called for hearing February 10. It was alleged in the petition that objectors feared they would not receive a fair trial before Judge Ludens and predicated such belief upon statements he had made which were to the effect that if the drainage proposed in the petition would be of benefit to any of the lands in the district, it should be granted and that any objections against the proposed drainage should be overruled. It was also alleged that they were unacquainted with the facts revealing such prejudice until four days preceding the filing of the petitions.

On February 10, the petition for a change of venue was denied and additional time given to file objections. Appellants then filed thirty-one objections, twenty of which were the same as those filed December 3, to the hearing on the petition. Objections Nos. 23 and 31 raised questions as to benefits and the others related to the making of the assessment roll. All objections except Nos. 23 and 31 were overruled. On a jury trial on the questions of benefits, a verdict was returned sustaining the assessment as entered in the assessment roll. The ownership of some of the property owned by the original objectors changed during the pendency of the proceeding and the new owner was permitted to intervene. The appellants are Henry L. Goembel, Jess V. Hulslander and Martin L. Franks. The assessments on their lands are $877.80, $31.84 and $794.48, respectively.

The petition for a change of venue was filed under the second subdivision of section 1 of the Venue Act, (Ill. Rev. Stat. 1941, chap. 146, par. 1,) which states that a change of venue may be had when either party shall fear that he will not receive a fair trial because the judge is

prejudiced against him. The petition in this case for a change of venue appears to be in proper form and was duly verified as required by statute. The controlling question is as to whether it was filed in apt time.

A petition for a change of venue must be made at the earliest practicable moment. (*Ossey* v. *Retail Clerks' Union,* 326 Ill. 405; *McClelland* v. *McClelland,* 176 Ill. 83; *Haley* v. *City of Alton,* 152 Ill. 113.) An application made after the hearing started comes too late. (*Ossey* v. *Retail Clerks' Union,* 326 Ill. 405; *Richards* v. *Greene,* 78 Ill. 525; *Hudson* v. *Hanson,* 75 Ill. 198.) The reason that supports the rule is obvious. It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed.

It will be noted that twenty of the legal objections filed to the petition of December 3, 1941, were renewed as objections to the assessment roll. These objections, in one form and another, questioned the court's authority to confirm an additional assessment roll in a proceeding under section 37 when there was nothing in the record of the district or the court to show that the commissioners had complied with the organization requirements of the act. This objection is the only one arising out of the legal objections that is urged as a ground for reversal on this appeal. It is claimed it was incumbent on the commissioners to prove that they had adopted a plan of ditches and levees that when completed would furnish adequate drainage to all the lands in the district. If the hearing on legal objections to the petition is to be deemed as a part of the hearing of legal objections to the assessment roll and the trial on benefits, then it must be said that the application for change of venue came after the hearing

started and was too late. The similarity of questions raised as to each set of legal objections shows that appellants treated the two hearings as one. When the court ruled on the objections to the petition, appellants knew what the judge's attitude would be when the same objections were filed to the assessment roll. Under the circumstances each hearing must be taken to be a part of the whole proceeding. Appellants undertake to base their belief of the judge's prejudice upon the statements Judge Ludens made a few days previous to the filing of the petition for change of venue. The time of becoming acquainted with that fact merely overcame the bar raised by section 6 of the Venue Act and did not meet the requirement that the application must be made before the hearing starts.

The case of *Haley* v. *City of Alton*, 152 Ill. 113, was a special-assessment proceeding under the Local Improvement Act. After the legal objections had been overruled and a few days before the trial on benefits, the objectors made application for a change of venue on the ground of the prejudice of the judge. It was held that the hearing on the legal objections was a part of the case and since that part had received the consideration of the court, it was too late to then petition for a change of venue. The petition for a change of venue was properly denied.

District No. 1 abuts upon Rock river, is a long narrow tract two to three miles wide and extends in a northeasterly and southwesterly direction. During the period for which the records are lost and while operating under one of the prior acts, an open ditch three and one-half miles in length was constructed near the center of the district. It extends from Penny slough where it had its outlet, to the northeastern part of the district. It was alleged in the petition for additional assessments that this ditch constituted the system of drainage for said district, that the former commissioners had levied and collected assessments

for the payment of the cost and maintenance of the ditch but that all of such funds had been expended. It was alleged that for some time prior to the reorganization the ditch had not been properly maintained and as a result of such neglect it had become filled with silt and sediment to such an extent that it did not furnish the drainage for which it was designed and constructed. It was also alleged that by previous order of court the commissioners had transferred $1200 from a levee maintenance fund to the ditch account and that said amount had been expended in cleaning a part of the ditch. Of the $4990 asked to be levied, $1200 of it was to repay the amount borrowed from the levee maintenance fund and the balance was to be used in recleaning the part of the ditch which had been cleared in 1940 and to finish the remainder of the ditch.

Parts of the appellants' lands are located between the ditch and the bluffs to the east. They do not question the validity of the organization of the district under the Levee Act or the necessity for drainage, but contend that there should be records of an established system of drains more extensive than that furnished by a single open ditch. In this connection it is urged that proper drainage would include laterals extending from the main ditch to the east to collect the waters from a large watershed on the hill. Appellants' complain that without such additional ditches the improvement of the existing ditch will not benefit their lands. In short, they contend that before the commissioners could proceed with the matter and the court order an additional assessment, it was necessary that the records of the district show a comprehensive and complete plan for drainage. In support of their position they refer to sections of the Levee Act which pertain to districts that are first organized under the Levee Act and emphasize the conditions in subsection 7 of section 9.

It is not necessary in this proceeding to determine what the commissioners of the district might, in a proper pro-

ceeding, be required to do to meet the requirements of sections which pertain to districts originally organized under the act or what the district should do to comply with subsection 7 of section 9. This is a proceeding under section 37 for an additional assessment and any legal objections filed to the petition or assessment roll should be limited in scope of inquiry to the requirements of the section. The distinction between the questions that may be tried in a proceeding under section 37 and subsection 7 of section 9 was noted in *England Pond Drainage Dist.* v. *Hurst,* 344 Ill. 610, which case is controlling on this point here.

It is urged that on the trial for benefits, reversible error was committed in the rulings on the admission and rejection of evidence and in the giving and refusal of instructions. Ten witnesses, whose acquaintance with drainage conditions in the district covered a period of several years, testified as to the effect the completed project would have on appellants' lands. They testified that the improvement would not benefit appellants' lands; that the flood waters from the hills would gather on these lands and not flow into the ditch. Six witnesses, whose familiarity with the drainage conditions in the district extended over years, testified on behalf of the commissioners. None of them stated that any tract of land would be benefited the amount fixed in the assessment roll. Their answers as to benefits were general and very indefinite, such as that the proposed improvement "would help the land," that "I think it is a benefit to lands up there," and "I would say it would help those lands." Such evidence was not very persuasive in rebutting the testimony of the witnesses for appellants that there would be no benefit from the improvement. The civil engineer who made the plans, profiles and specifications for the proposed work testified positively that appellants' various tracts of land would be benefited the amount fixed in the assessment roll. Viewing the evidence

in the light most favorable to support the verdict and judgment, it must be said that it was such that the rulings of the court on the admissibility of evidence and the giving of instructions should have been accurate.

Appellants refer to some fifteen rulings on evidence which they contend constitute reversible error. It will not be possible to discuss each of them. In some instances appellants undertook to introduce evidence on matters which were not within the issues before the jury. They undertook to prove facts that could not be in issue in a proceeding to assess additional benefits. They asked that the jury be directed to answer six special interrogatories which dealt with questions such as "Will the system of drainage established in 1881 as modified 28 years ago with the repairs now proposed, sufficiently and permanently drain all the lands in said district?" Clearly such interrogatories were not proper in this character of hearing. In a proceeding of this kind there are only two issues to be submitted to the jury: one, was the property assessed more than it was benefited; and the other, was it assessed more than its proportionate share of the cost of the entire improvement. (*McGee Drainage Dist.* v. *Wabash Railway Co.* 319 Ill. 379; *Savanna and York Drainage Dist.* v. *DeLaVergne,* 298 Ill. 480.) Adherence to such principle eliminates several of appellants' objections to rulings on the introduction of evidence.

However, there was error in some of the rulings. Witness Hulslander testified as to the general course which flood waters flowed across his lands and the effect the water from the hills had on them. He was then asked as to whether the cleaning of the old ditch as proposed would be of any benefit to him. His answer was that when there was a flood the water spread over his own ground and escaped by seepage, that there would not be much benefit without ditches to drain the hill waters to the main ditch.

On motion of appellees, his answer was stricken. In view of his previous testimony, such ruling was error. Although appellants could not in this proceeding inject the drainage of hill waters to the main ditch as a condition upon which the commissioners could proceed under section 37 to levy an additional assessment, yet on the trial of benefits the landowners had the right to show the area of the watershed that came from the hills and courses such flood waters followed to their lands and the conditions that would make it impossible for part or all of such water to reach the ditch to be improved. This was relevant to the question of benefits and should not have been stricken. The evidence of the witness Goembel, that he had a conversation with the attorney for the district before he paid a previous assessment and that the attorney made certain promises in reference to further drainage and that but for such promises he would not have paid the assessment, was objected to and the objection was properly sustained. Other errors assigned are of such a nature that it is not probable that they will occur in another trial.

Appellants object to nine of the instructions given at the request of the commissioners. The seventh told the jurors that if they found that the amount of benefits, if any, to the lands of the entire district was equal to or in excess of the estimated cost of $4990, then their verdict against the several tracts should produce a total of such estimated cost. This instruction was liable to mislead the jury. The assessments in this kind of case are against each tract of land and the jury's function is to consider each tract as a unit and determine whether the assessment as fixed in the roll exceeds the benefits accruing to it by the completed improvement. If it is found the assessment as to certain tracts is in excess of the benefits, the verdict must accord with such finding, regardless of the fact that

it may result in a total less than the estimated cost. The instruction as given stressed the importance of the total verdict equalling the estimated cost and was almost certain to lead the jurors to believe that their duty was to ·assess the various tracts in some way that the total of their verdict would equal the estimated cost. *Little Beaver Drainage Dist.* v. *Livingston,* 270 Ill. 582.

Instruction number nine directed that the commissioners' roll of assessments, "is *prima facie* evidence that the amount assessed against each tract as shown on the roll is a correct assessment of benefits as required by law and unless evidence in regard to the benefits, if any, to these lands has been introduced on behalf of the objectors in this cause, the commissioners' roll should be accepted by you as correct." Section 17 (a) (Ill. Rev. Stat. 1941, chap. 42, par. 19,) provides that the commissioners on behalf of the district shall present and file as their claim against the several landowners and tracts of land, the assessment roll "which shall make out a *prima facie* case for the commissioners." A few of the cases where the meaning of the foregoing provision and similar provisions have been considered are *Beaver Pond Drainage Dist.* v. *Gray,* 341 Ill. 66; *McGee Creek Drainage Dist.* v. *Sides,* 336 Ill. 267; *Village of Bellwood* v. *Galt,* 321 Ill. 504; *City of Peoria* v. *Peoria Railway Co.* 274 Ill. 48; *People ex rel. Freeman* v. *Whitesell,* 262 Ill. 387. The universal holding has been that the assessment roll or certificate which the statute clothes with a presumption of correctness shall prevail unless there is evidence to the contrary and that such statutory provision casts the burden of proof upon the one who asserts that the certificate or the assessment roll is not correct. It is the holding in these and other cases that when the objector has introduced such evidence, the certificate or roll ceases to have any force as proof. In this case the several witnesses called by appellants testified to facts showing that the lands of ap-

pellants would not be benefited to any degree by the cleaning of the ditch. After the introduction of such evidence, the assessment roll was no longer deemed to be *prima facie* correct. The statement in the instruction that the roll "is *prima facie* evidence" was no longer correct as to appellants' lands. The condition stated in the instruction that the rolls' *prima facie* effect was lost if the jury found that evidence as to benefits had been introduced was not proper, for there was no question but that evidence to that effect had been introduced. The instruction that it was *prima facie* evidence was liable to cause the jury to attach improper significance to the roll and to treat it as evidence.

Instruction numbered eleven told the jury that for the purpose of assessing benefits the several tracts were to be treated as units and that where a part of a given tract was wet or overflowed, it would follow that the drainage of such part would be a benefit not alone to the part so drained, but to the remainder of said tract. The evidence shows that each of appellants owned lands outside the district which adjoined their respective tracts in the district. It is contended that the effect of the instruction was to tell the jury to assess the lands in the district for benefits that would accrue to the lands of appellants located outside the district. The instruction is not subject to such criticism. It refers to the tracts as a unit and there is no evidence that any part of the legal description constituting a unit which is located in the district was a part of a tract or unit located outside the district. The tracts owned by appellants outside the district were units disconnected from the tracts or units located in the district. The instruction had particular application to appellant Franks' land, for the evidence shows that there was located on his tract within the district a depression known as Spade's slough into which flood waters flowed and stood for a considerable part of the year. Other

parts of this tract were higher than the land immediately adjacent to the slough and were under cultivation and produced crops each year. There was evidence tending to show that the completion of the ditch would lower the water level in Spade's slough, which, if true, would not only benefit the low, wet land adjacent to the main body of the slough but would improve the drainage conditions on the part which was cultivated each year.

We do not deem it necessary to extend this opinion to the consideration of other instructions included in appellants' grounds for reversal. Some of them are subject to criticism but enough has been said to indicate the principles that should serve as a guide in a retrial of the question of benefits as to appellants' property.

For the reasons assigned, that part of the judgment which confirms the verdict of the jury on benefits is reversed and the cause is remanded for a new trial on such questions. All other parts of the judgment, including that which overruled the legal objections and which sustained the assessment against other lands in the district, are hereby affirmed.

*Affirmed in part; reversed in part and remanded.*